**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**BRENDA GREEN,** *et al.*  **PLAINTIFFS**

**VS.**  **CIVIL ACTION NO. 3:17-CV-149-MPM-JMV**

**MANAGEMENT & TRAINING CORPORATION,**
*et al.*  **DEFENDANTS**

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF
DEFENDANT MANAGEMENT & TRAINING CORPORATION'S
MOTION FOR SUMMARY JDUGMENT**

---

**COMES NOW** Defendant Management & Training Corporation ("MTC"), through counsel and pursuant to the Federal Rules of Civil Procedure, and moves this Court for an Order granting summary judgment. In support, MTC would show the following:

**INTRODUCTION**

This is a civil rights case generally based upon MTC's alleged failure to timely provide medical treatment to John Robert Green, III ("Green"), a prisoner who died while incarcerated at Marshall County Correctional Facility ("MCCF"). Green was serving a life sentence without the possibility of parole for the 2005 murder of Ricky Taylor in Sardis, Mississippi. Green was convicted by a jury in the Circuit Court of Panola County, First Judicial District on September 21, 2006.

Plaintiffs have alleged counts of general negligence and violations of the Eighth and Fourteenth Amendments to the U.S. Constitution. Plaintiffs premise their claims on the fact that unspecified "Defendants" "often failed to provide Mr. Green with his blood pressure medication, and on information and belief he had none on New Year's Eve or [sic] on January 1, 2017." [Doc. 4] at ¶ 13. In addition, Plaintiffs alleged that, "due to the holiday, MTC management

allowed the prison to be dangerously understaffed, or alternatively because of the holiday the management and staff recklessly disregarded their duties to make adequate provision for the medical needs of prisoners, including Mr. Green." [Doc. 4] at ¶ 23. They go on to allege that, "[t]he objectively and subjectively deliberate indifference of the defendants to Green's serious medical needs, or alternatively, the negligent and grossly negligent omissions and actions of the defendants were the proximate cause of Green's death." [Doc. 4] at ¶ 26. It is clear that Plaintiffs' **entire case** is premised upon now erroneous or mistaken affidavits from fellow inmates, along with Plaintiffs' expert witness's opinion which is based entirely on those faulty affidavits. Plaintiffs' can offer no first-hand knowledge to support any of the allegations alleged in their Amended Complaint. In fact, the concrete evidence provided by surveillance video and deposition/affidavit testimony will show that Defendant MTC acted reasonably in response to Mr. Green's distress.

In the early morning hours of January 1, 2017, Green began having chest pains. At or about 6:40 a.m., an unidentified offender signaled towards the watch tower that another offender was having some sort of trouble. At 6:47 a.m., a Code Blue (a call for medical help) was called for Bravo Dorm 2 where Green was housed. At about 6:51 a.m., MTC employees responded to Green's dorm where he was found sitting upright against his bed. Ultimately, Green was carried out of the dorm on a stretcher, and taken to the medical dorm. At roughly 6:57 a.m., a Code Green was called, and CPR and other life saving measures were undertaken. By 7:10 a.m., MCCF officials called for an ambulance. The Med Stat ambulance arrived on the unit at 7:33 a.m. Green was deceased when the ambulance arrived.

The uncontroverted record shows that Plaintiffs cannot establish any unconstitutional policy or custom on the part of MTC which was the proximate cause of Green's death.

Additionally, Plaintiffs cannot show that Defendant MTC acted with deliberate indifference to Mr. Green's distress or the other inmates' calls for help, as the guard on duty, Jadominique Phillips, responded within minutes of the first call for help. Similarly, Plaintiffs cannot demonstrate that any MTC employee acted negligently in seeking care for Green's symptomology. Accordingly, the Plaintiffs' § 1983 claims fail as a matter of law, and the state law claims should also be dismissed with prejudice.

## STATEMENT OF UNDISPUTED FACTS

1. Green was convicted by a jury in the Circuit Court of Panola County, First Judicial District on September 21, 2006.

2. Green was serving his sentence at the Marshall County Correctional Facility on the date of the subject accident.

3. On January 1, 2017, MTC had a policy in place regarding offender counts, which outlined the times Correctional Officers are to conduct counts.

4. MTC maintained records that indicated that offender counts were performed on the morning of January 1, 2017.[1]

5. On that same date, MTC had a policy in place regarding emergency medical services for inmates.

6. On January 1, 2017 at approximately 6:40 a.m., an unidentified offender signaled into the security camera that another offender was having some sort of trouble.

7. At 6:47 a.m., a Code Blue was called for Unit 2B where Green was housed.

8. Within minutes, MTC employees responded to Green where he was found sitting upright against his bed.

9. Green was almost immediately transported to the medical dorm of MCCF, wherein medical care was provided.

10. MTC and the Mississippi Department of Corrections ("MDOC") entered into a Management and Operations Agreement on August 31, 2012, which was retroactively effective on August 13, 2012. See below:

---

[1] See *Marshall County Correctional Facility Offender Count Sheets*, collectively marked as Exhibit "A."

> This Management and Operations Agreement ("Agreement") is made and entered into on this the 31st day of August 2012, effective August 13, 2012, by and between the MISSISSIPPI DEPARTMENT OF CORRECTIONS ("MDOC"), located at 723 North President Street, Jackson, Mississippi 39202 and Management & Training Corporation ("MTC"), a Delaware corporation, located at 500 N. Marketplace, Centerville, Utah 84014. MTC and MDOC will be referred to jointly as the "parties".

11. Section 4.1 of the Management & Operations Agreement states that MTC's General Duties as follows:

    > SECTION 4.1   General Duties.
    >
    > MDOC hereby appoints MTC exclusively and MTC hereby accepts this appointment as manager and operator of the Facility. MTC shall maintain and manage the Facility in compliance with applicable federal and state laws, court orders and ACA Standards for Adult Correctional Institutions. If there exists a difference between the above standards and/or laws, the higher standard will be followed. All official communications shall be managed according to policies to be adopted by all parties.
    >
    > MTC will confine the Inmates sent by MDOC, and subject to Sections 4.7 and 4.8, give them reasonable and humane care and treatment, provide appropriate programs, treatment and training, supervise them, and maintain discipline and control consistent with constitutional standards. MTC will provide no special privileges to the Inmates and shall see that the sentences of the committing court in the State are faithfully executed.

12. MTC was not responsible or liable for providing medical care to the inmates at MCCF pursuant to Section 4.8:

    > SECTION 4.8   Medical/Dental.
    >
    > MTC will not be responsible or liable for providing medical, mental health, optometry, pharmaceutical, dental, or similar services. MDOC shall provide security and control of Inmates for outpatient needs and/or hospitalization.

13. Health care decisions at MCCF rested solely with the health care contractor, Centurion of Mississippi, LLC, and not with MTC.

## **SUMMARY JUDGMENT STANDARD**

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate when, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." The party seeking summary judgment bears the burden of demonstrating an absence of evidence to support the non-movant's case. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). Once the movant shows that no genuine issue of material fact exists, the burden shifts to the non-movant to set forth specific facts to establish a genuine issue of material fact, without merely resting on allegations and denials. *Id.*

The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the Plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Employees* v. *City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). Thus, the non-movant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Doe* v. *Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). It is not the function of the court to search the record on the non-movant's behalf for evidence which may raise a fact issue. *Topalian* v. *Ehrman*, 954 F.2d 1125, 1137 n. 30 (5th Cir. 1992).

## ARGUMENT

**I.   Plaintiffs' claims against MTC should be dismissed with prejudice, insofar as they cannot demonstrate any unconstitutional policy or custom.**

### A.   § 1983 Standard.

The elements of a claim under §1983 are determined by the right allegedly deprived. *See*, *e.g.*, *Albright* v. *Oliver*, 510 U.S. 266, 271 (1994) (internal cites omitted) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"). In other words, the statute is an enabling statute, allowing a

plaintiff to bring a cause of action based upon a violation of an established federal right. Thus, it is necessary to examine the specific constitutional protections Plaintiffs are claiming MTC violated.

In their Amended Complaint, Plaintiffs alleged the following constitutional violation against MTC:

> "objective and subjective indifference under color of state law of each of the defendants to Mr. Green's serious medical needs, including intentional failure to provide Green essential medications, the decision to not have adequate emergency responders and other medical personnel on duty, and/or intentional failure of personnel to respond to cries for help for three hours and intentional failure to take Mr. Green to a fully-equipped emergency room, or otherwise to provide adequate resuscitation procedures for another 2 hours were the proximate cause of his death…and violated his clearly established right under the 8th and 14th Amendments of the United States Constitution to adequate care for his serious medical needs."[2]

In order to establish constitutional liability against MTC, Plaintiffs must demonstrate more than vicarious liability; there is no vicarious liability for constitutional violations. A municipality – and for purposes of constitutional analysis, MTC is considered a municipality here – can be held liable under Section 1983 for violating a citizen's constitutional rights but only if "the governmental body itself 'subjects' [that] person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick* v. *Thompson*, 131 S. Ct. 1350, 1359 (2011). Governmental entities are "responsible only for [their] own illegal acts" and are "not vicariously liable under § 1983 for [their] employees' actions." *Id.* Thus, there is no *respondeat superior* liability under Section 1983; rather, the key to municipal liability is demonstrating that a deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. *Monell* v. *Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). The alleged unconstitutional conduct asserted "must be directly attributable to the

---

[2] [Doc. 4] at ¶ 27 marked as Exhibit "B."

municipality through some sort of official action or imprimatur." *Piotrowski* v. *City of R.H.*, 237 F.3d 567, 578 (5th Cir. 2001).

To establish constitutional liability against MTC, Plaintiffs must establish 1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera* v. *R.H. Indep. Sch. Dist.*, 349 F.3d 244, 247-249 (5th Cir. 2003). A "policy or custom" can be either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *McGregory* v. *City of Jackson*, 335 Fed. App'x. 446, 448-449 (5th Cir 2009). Plaintiffs must also demonstrate a link between the policy and the constitutional violation, and the policy must be maintained with "objective deliberate indifference" to a constitutionally protected right. *Lawson* v. *Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002). A municipality acts with objective deliberate indifference if it promulgates a policy or custom despite the "known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 567. Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability. *Id.* at 579.

To establish a *Monell* policy or custom, Plaintiffs have essentially four different paths: 1) There was an unconstitutional policy adopted by the final policymaker; *Maddux* v. *Officer One*, 90 F. App'x 754, 757 (5th Cir. 2004); 2) There was an unwritten custom or practice that was not formally written or adopted, but that is a pervasive, long-standing practice that essentially has the

force of law; *Sharp* v. *City of Houston*, 164 F.3d 923, 936 (5th Cir. 1999); 3) Where the Plaintiff can point to a failure to train, supervise, discipline, screen, etc.; *City of Canton* v. *Harris*, 489 U.S. 378 (1989); or 4) Where, in certain situations, the decisions or acts of a final policymaker may be attributable to the municipality; *City of St. Louis* v. *Praprotnik*, 485 U.S. 112, 123 (1988). In this case, MTC had no formal or any other policy which was facially unconstitutional, and Plaintiffs have made no allegations of anything done by a "final" policymaker, so the only path to liability would be to prove either an unwritten custom or a failure to implement a certain policy. Plaintiffs can demonstrate neither.

Plaintiffs' Amended Complaint failed to explicitly state any unwritten custom or failure to implement a certain policy.[3] Plaintiffs' Amended Complaint only addressed a failure to provide medical attention to Green.[4] This assertion cannot be attributed towards MTC, as the facility's medical care is contracted out to Centurion of Mississippi, LLC.[5] Further, even after conducting extensive discovery, Plaintiffs could not meet their burden to prove that MTC had an unwritten custom or failed to implement a certain policy that violated Mr. Green's constitutional rights. During Plaintiffs' individual depositions, each failed to provide any first-hand evidence relating to an unwritten custom of MTC that violated Mr. Green's constitutional rights. To the contrary of Plaintiffs' allegations, MTC had policies in place regarding offender counts and medical emergencies to prevent this very type of event from occurring.[6] MTC directly complied with these policies regarding offender counts while monitoring and caring for Green while he was in the custody of MCCF.[7] As such, Plaintiffs' claims should be dismissed.

---

[3] *Id.*
[4] *Id.* at ¶¶ 23-24.
[5] See *Deposition Transcript of Robyn Williams* p.14, ll.11-15; p.65, ll. 7-12 marked as Exhibit "C.".
[6] See *Offender Count & Transport; Offender Count; and Emergency Medical Services – Major Institutions Policies*, collectively marked as Exhibit "D."
[7] See Exhibit "A."

**B.     Plaintiffs cannot prove that Defendant MTC acted with deliberate indifference to Mr. Green's medical needs.**

"An inmate's right to medical care is abridged if a prison official acts with deliberate indifference to his medical needs, as deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Hall*, 2018 U.S. Dist. LEXIS 134135 at *10 (N.D. Miss 2018) (holding that the prison guard's actions did not amount to deliberate indifference because the guard did not know of the inmate's need for medical attention.) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1978)). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Id.* (citation omitted). Under this standard, a prison official is not liable under § 1983 unless the plaintiff alleges facts which, if true, would demonstrate that the official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Id.* (citation omitted). Where a plaintiff complains of a delay in medical treatment, he must show deliberate indifference to serious medical needs that resulted in substantial harm. *Id.* (citing *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) and *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006)). "Evidence of efforts by prison staff to attend to the medical need will negate a finding of deliberate indifference." *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). "Not all failure to provide care is actionable, however, as negligent conduct by a prison official does not give rise to a constitutional violation." *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990)).

In an attempt to create a deliberate indifference, Plaintiffs solely rely on two (2) sworn statements of inmates housed inside the Marshall County Correctional Facility Bravo 2

Dormitory.[8] Each statement was drafted roughly 11 months after the date of the alleged incident, wherein the inmates relied on fabricated guestimates of time to attempt to create an appearance of deliberate indifference.[9] However, after being presented with hardcore evidence via video surveillance[10] of Bravo 2 Dormitory, both inmates voluntarily offered amended Affidavits to support the fact that Defendant MTC responded to the inmates' calls for help within minutes of being alerted of Mr. Green's distress.[11] Additionally, Plaintiffs alleged that the guard in the watch tower was asleep at the time that the inmates attempted to get her attention to alert her of Green's distress. This could not be any further from the truth, as video surveillance shows the guard conversing with an unidentified inmate just minutes prior to the distress calls.[12] This new and finally truthful assertion by the inmates, along with the evidence produced by deposition testimony and video surveillance, does not equate to any negligence, and it certainly does not rise to the level of a deliberate indifference by Defendant MTC or the guard on duty.

In fact, during Jadominique Phillips's deposition, she testified that she was alerted of the incident when an inmate banged on the glass to get her attention at 0640.[13] Additionally, Phillips indicated that once she was alerted of Mr. Green's distress, she confirmed the distress and called a "Code Blue."[14] Further, Phillips testified that when she arrived in the Bravo Dormitory to cover her shift, she did not see Mr. Green in any distress prior to the notification at 0640.[15] It is clear

---

[8] See *Declaration of Kevin Wilson* and *Sworn Affidavit by Adam Lee Pinkton,* collectively marked as Exhibit "E."
[9] *Id.*
[10] See *Video Surveillance*, marked as Exhibit "F."
[11] See *Affidavit of Kevin Wilson* and *Affidavit of Adam Pinkton*, collectively marked as Exhibit "G."
[12] See Exhibit "F."
[13] See *Deposition Transcript of Jadominique Phillips,* p. 10, ll. 8-9 and p. 24, ll. 15-24 marked as Exhibit "H."
[14] *Id.* at pp. 23-24, ll.19-25 and 1-14.
[15] *Id.* at p. 25, ll. 2-11.

that MTC and its employees responded to Mr. Green's distress at the time they were made aware of the same.

In a last attempt to show that MTC acted with a deliberate indifference to Green's condition, Plaintiffs retained Evan L. Brittain, M.D. as an expert witness. During his deposition, Dr. Brittain admitted to heavily, if not solely, relying on the untruthful statements of the two (2) inmates which Plaintiffs premise their claims upon.[16] However, during Dr. Brittain's deposition, he agreed that if the factual evidence presented via the video surveillance is true – which MTC has now shown to be a fact – then MTC responded to the distress calls within a reasonable amount of time; thus, complying within the standard of care.[17] Therefore, Plaintiffs cannot meet their burden to show that MTC exhibited deliberate indifference thus violating Mr. Green's constitutional right(s). As such, Plaintiffs' claims should be dismissed with prejudice.

**II.    Like their constitutional claims, Plaintiffs' state law claims fail as a matter of law because Plaintiffs cannot demonstrate that MTC acted with negligence.**

Plaintiffs' Amended Complaint alleges separate counts of negligence/gross negligence[18] and vicarious liability.[19] Under Mississippi law, there is no stand-alone cause of action for "respondeat superior" or vicarious liability; instead, they are merely an alternative path to impose corporate liability. *See Jordan* v. *Premier Entm't Biloxi, LLC*, No. 1:13CV195-LG-JCG, 2014 WL 5773762, at *2, FN 2 (S.D. Miss. Nov. 6, 2014). Thus, MTC will only address the general law of negligence.

To succeed on a negligence claim, Plaintiffs must establish a duty and present competent evidence that the Defendant breached that duty and that the breach actually and proximately

---

[16] See *Deposition Transcript of Evan L. Brittain, M.D.*, p. 35, l. 25 and p. 36, ll. 1-10, marked as Exhibit "I."
[17] *Id.* at p. 36, ll. 11-25; p. 37, ll. 1-8,17-25; p.38, ll. 1-15; p. 40, ll. 22-25; p. 41, ll. 1-2; p. 44, ll. 8-25; p. 45, ll. 1-25; p. 46, ll. 7-22.
[18] [Doc. 4] at ¶ 28.
[19] *Id.* at ¶ 29.

caused their injuries. *Elliott v. Mgmt. & Training Corp.*, 2017 U.S. Dist. LEXIS 111975, at *30-31 (N.D. Miss. 2017). Like the constitutional claims, Plaintiffs attempt to impose some sort of strict liability on MTC. While Mississippi law has imposed "a duty upon a sheriff in this capacity as jailer to exercise ordinary and reasonable care for the preservation of the life and health of his prisoners," this duty has not been extended to supervisors at large prisons, such as MCCF. *Bogard* v. *Cook*, 405 F. Supp. 1202, 1215 (N.D. Miss. 1975) aff'd, 586 F.2d 399 (5th Cir. 1978). *Id.* at 1216. The reason for not extending this duty is because of the much larger number of inmates housed at MCCF as compared to a jail operated by a sheriff. *Id.* The *Bogard* Court noted that "it would be rare for a sheriff to have custody of more than two dozen prisoners at any time, at least half of whom would probably be pre-trial detainees rather than persons serving time pursuant to a conviction and sentence of a state court." *Id.*

Plaintiffs' claim for vicarious liability fails because they cannot identify any MTC employee who acted negligently. An entity (such as MTC) can be held liable for the acts or omissions of its employees acting within the course and scope of their employment. *Elliott* at *31. However, the logical corollary to that proposition is that the Plaintiffs must present some evidence to create a question of fact about which employee breached a duty to Green. First, Plaintiffs have failed to identify the "prison personnel" they claim failed to respond to Green's calls for help.[20] Plaintiffs pled the identity of "John and Jane Does 1-10 are unknown individuals sued in their individual capacities. They are employees, agents, or independent contractors of MTC or ABC Co."[21] However, Plaintiffs failed to amend their Amended Complaint to name any such individual after conducting discovery. Without identifying any personnel that acted improperly in failing to respond to Green's alleged call for help, Plaintiffs' claim fails.

---

[20] *Id.* at ¶¶ 16-19.
[21] *Id.* at ¶ 9.

However, if this Court accepts Plaintiffs' contention that MTC's employee Jadominique Phillips was the unidentified employee, their claim still fails pursuant to the uncontroverted evidence before this Court. Through the inmates' now truthful affidavits, the video surveillance, and deposition testimony,[22] it is clear that Phillips did not breach any duty owed to Green. Phillips responded to the inmates' distress calls within minutes once she was notified of Green's condition by calling the "Code Blue," which Plaintiffs' expert witness Dr. Brittain corroborated after reviewing the video surveillance.[23] Although the results of this incident are unfortunate, Plaintiffs can show no negligence on behalf of MTC or Jadominique Phillips. As such, Plaintiffs' claims should be dismissed.

**III. Plaintiffs can demonstrate no fact which would support any liability for punitive damages on the part of MTC.**

**A. The question of punitive damages is ripe for disposal on summary judgment.**

Under the statute governing punitive damages, Courts are required to determine whether or not a claim for punitive damages should be placed before the trier of fact. "The ***court*** shall determine whether the issue of punitive damages may be submitted to the trier of fact…" Miss. Code Ann. § 11-1-65(d) (emphasis added). The decision of whether to submit the issue of punitive damages to the jury is made viewing 'the totality of the circumstances in light of defendant's aggregate conduct,' that a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard. *Green v. Polyester Fibers, LLC*, 2015 U.S. Dist. LEXIS 138765 *13 (N.D. Miss. 2015). Therefore, the question of whether or not to submit the issue of punitive damages is a question of law, which can and should be decided at the summary judgment stage.

---

[22] See Exhibits "F," "G," "H," & "I."
[23] See Exhibit "I," p. 37, ll. 19-25; p. 38, ll. 1-15; p. 44, ll. 15-25; p. 45, ll. 1-25; p. 46, ll. 7, 10-22.

### B. Under Mississippi law, there is no vicarious liability for punitive damages.

It is black letter law in Mississippi that there is no vicarious liability for punitive damages, since the purpose of punitive damages is to punish and deter rather than to compensate the injured. The statute itself says as much: it provides for punitive damages only if, ". . . ***the defendant against whom punitive damages are sought*** acted with actual malice, gross negligence . . . , or committed actual fraud." Miss Code Ann. § 11-1-65(1)(a) (emphasis added).

Further, Plaintiffs cannot demonstrate any fact which would support the imposition of punitive damages **against MTC.** The district courts in the Southern and Northern Districts of Mississippi have routinely held that punitive damages are not available under the Mississippi law based solely upon vicarious liability. *See, e.g.*, *King* v. *Cole's Poultry, LLC*, No. 1:14-cv-88-MPM-DAS, 2016 U.S. Dist. LEXIS 164359, 2016 WL 6993763, at *12 (N.D. Miss. Nov. 29, 2016) (collecting cases); *Littlejohn* v. *Werner Enterprises, Inc.*, No. 1:14-CV-00044-SA-DAS, 2015 U.S. Dist. LEXIS 71007, 2015 WL 3484651, at *2 (N.D. Miss. June 2, 2015) (citing *Duggins* v. *Guardianship of Washington Through Huntley*, 632 So. 2d 420, 433 (Miss. 1993) (Lee, J., dissenting)); *Bass* v. *Hirschbach Motor Lines, Inc.*, No. 3:14CV360-TSL-JCG, 2014 U.S. Dist. LEXIS 145712, 2014 WL 5107594, at *3 (S.D. Miss. Oct. 10, 2014); *Bradley* v. *Wal-Mart Stores, Inc.*, No. 2:04CV360-JMR, 2006 U.S. Dist. LEXIS 70110, 2006 WL 2792338, at *4 (S.D. Miss. Sept. 27, 2006); *see also Gamble ex rel. Gamble* v. *Dollar General Corp.*, 852 So. 2d 5, 15 (Miss. 2003) (looking only to the acts of Dollar General itself, not those by its employee alone which violated store policy, in determining if the proof offered at trial demonstrated the question of punitive damages should have been allowed to go to the jury).

As noted above, Plaintiffs have failed to identify any action by MTC which would constitute malice or any other factor making consideration of punitive damages appropriate. To

warrant jury consideration of punitive damages, a Plaintiff bears the burden of demonstrating a question of fact on, "whether the aggregate of the defendant's conduct evidences willful or wanton conduct or the commission of a fraud." *Bradfield* v. *Schwartz*, 936 So. 2d 931, 937 (Miss. 2006). Because Plaintiffs cannot demonstrate conduct on the part of MTC warranting punitive damages, the Court should hold that the claims fail as a matter of law.

      **C.      To the extent that MTC has any liability, the facts of this case do not demonstrate the sort of gross negligence, recklessness, or maliciousness which would merit jury consideration of punitive damages.**

Mississippi law disfavors punitive damages, and they are only to be awarded in the most egregious cases. *Warren* v. *Derivaux*, 996 So. 2d 729, 738 (Miss. 2008) (internal cites omitted). Without undermining the seriousness of the incident which gives rise to this litigation, there is simply no evidence of any conduct on the part of MTC that would allow an award of punitive damages. To recover punitive or exemplary damages, a claimant must show by clear and convincing evidence that a defendant against whom such damages are sought acted, "with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others…" Miss. Code Ann. § 11-65-1(1)(a).

Assuming *any* negligence on the part of MTC, which MTC explicitly denies, there is no evidence that *MTC* did anything that was malicious, wanton, or reckless. Plaintiffs certainly have not produced any such evidence, which is their burden alone to carry.

## CONCLUSION

Under *Monell*, Plaintiffs cannot demonstrate that Defendant MTC had any policy or unwritten custom that was facially unconstitutional. Further, Plaintiffs cannot offer any evidence to support that Defendant MTC failed to implement a certain policy that resulted in any negligence or deliberate indifference towards Mr. Green or his medical needs. Lastly, reviewing

the totality of the circumstances in light of the Defendant's aggregate conduct, no trier of fact can determine that punitive damages should be awarded because Defendant MTC is not liable under Mississippi's general negligence laws. Summary judgment is appropriate and all claims against Management and Training Corporation should be dismissed *with prejudice.*

RESPECTFULLY SUBMITTED, this the 4th day of June, 2019.

**ADAMS AND REESE LLP**

By:  */s/ Darryl A. Wilson*

R. Jarrad Garner (MSB No. 99584)
Darryl A. Wilson (MSB No. 104902)
ADAMS AND REESE LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, Mississippi 39157
Telephone:    601-353-3234
Facsimile:      601-355-9708
jarrad.garner@arlaw.com
darryl.wilson@arlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document with the Clerk of the Court using the ECF electronic filing system, which sent notification of such filing to all counsel of record.

This the 4th day of June, 2019.

*/s/ Darryl A. Wilson*
Darryl A. Wilson