IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**BRENDA GREEN, et al**                                                                       **PLAINTIFFS**

**VS.**                                    **CIVIL ACTION NUMBER 3:17-cv-149 MPM-JMV**

**MANAGEMENT AND TRAINING CORP., et al**                            **DEFENDANTS**

## ORDER

This cause comes before the court on the motion of defendant Management and Training Corp. (MTC) *et al* for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiffs Brenda Green *et al* have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion should be granted in part and denied in part.

This is a wrongful death case, based on both federal claims asserted under 42 U.S.C. § 1983 and state law claims of negligence, arising out of the death of John Robert Green, III. Green died of a heart attack on January 1, 2017 while incarcerated at the Marshall County Correctional Facility (MCCF) operated by defendant. In its brief, defendant describes the facts surrounding Green's death as follows:

> In the early morning hours of January 1, 2017, Green began having chest pains. At or about 6:40 a.m., an unidentified offender signaled towards the watch tower that another offender was having some sort of trouble. At 6:47 a.m., a Code Blue (a call for medical help) was called for Bravo Dorm 2 where Green was housed. At about 6:51 a.m., MTC employees responded to Green's dorm where he was found sitting upright against his bed. Ultimately, Green was carried out of the dorm on a stretcher, and taken to the medical dorm. At roughly 6:57 a.m., a Code Green was called, and CPR and other life saving measures were undertaken. By 7:10 a.m., MCCF officials called for an

ambulance. The Med Stat ambulance arrived on the unit at 7:33 a.m. Green was deceased when the ambulance arrived.

[Defendant's brief at 2].

For their part, plaintiffs dispute many of defendants' assertions regarding the response times of prison employees, but, as discussed below, their evidence regarding the response time issue has been rather heavily impeached by summary judgment evidence in this case. Perhaps as a result of this impeachment evidence, plaintiffs assert in their brief that their "primary" claim now relates to their allegation that MTC failed to adequately staff its prison at the time of Green's death. Plaintiffs assert that deliberate indifference and/or negligence by MTC in staffing the prison resulted in employees discovering Green's distress later than they otherwise would have. Defendant has presently moved for summary judgment, arguing that no genuine issue of fact exists regarding its liability in this case and that it is entitled to judgment as a matter of law.

This court will first address plaintiffs' federal Eighth Amendment claims, as to which they face a much more daunting burden of proof than with their state law negligence claims. It is well settled that "[a]n inmate's right to medical care is abridged if a prison official acts with deliberate indifference to his medical needs, as deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Hall*, 2018 U.S. Dist. LEXIS 134135 at *10 (N.D. Miss 2018) (holding that the prison guard's actions did not amount to deliberate indifference because the guard did not know of the inmate's need for medical attention.) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04, 97 S. Ct. 285, 50 L.Ed. 2d 251 (1978)). In the Eighth Amendment context, the test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Id.* (citation omitted).

Under the subjective recklessness standard, there is no liability under § 1983 unless the plaintiff alleges facts which, if true, would demonstrate that a prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Id.* (citation omitted). Where a plaintiff complains of a delay in medical treatment, he must show deliberate indifference to serious medical needs that resulted in substantial harm. *Id.* (citing *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) and *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006)). "Evidence of efforts by prison staff to attend to the medical need will negate a finding of deliberate indifference." *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). "Not all failure to provide care is actionable, however, as negligent conduct by a prison official does not give rise to a constitutional violation." *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990)).

While the Eighth Amendment standard is thus a stringent one, that is not the only, or even the primary, obstacle to plaintiff's federal claims in this case. As noted in the decisions above, the typical Eighth Amendment claim deals with claims against specific state *officers* who, the plaintiffs typically allege, were subjectively indifferent to the medical needs of a prisoner. In this case, however, plaintiffs assert Eighth Amendment claims against MTC itself, and this places an additional, and very heavy burden, upon them in this case. In their brief, plaintiffs acknowledge that MTC is considered a "municipality" in the § 1983 context, which permits it to take advantage of the highly rigorous "policy or custom" standard set forth by the U.S. Supreme Court in *Monell* v. *Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).

A municipality may only be held liable under § 1983 for violating a citizen's constitutional rights if "the governmental body itself 'subjects' [that] person to a deprivation of

rights or 'causes' a person 'to be subjected' to such deprivation." *Connick* v. *Thompson*, 131 S. Ct. 1350, 1359 (2011). Governmental entities are "responsible only for [their] own illegal acts" and are "not vicariously liable under § 1983 for [their] employees' actions." *Id.* Thus, there is no *respondeat superior* liability under § 1983; rather, the key to municipal liability is demonstrating that a deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. *Monell* v. *Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). The alleged unconstitutional conduct asserted "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski* v. *City of R.H.*, 237 F.3d 567, 578 (5th Cir. 2001).

To establish constitutional liability against MTC, plaintiffs must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera* v. *R.H. Indep. Sch. Dist.*, 349 F.3d 244, 247-249 (5th Cir. 2003). A "policy or custom" can be either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *McGregory* v. *City of Jackson*, 335 Fed. App'x. 446, 448-449 (5th Cir. 2009).

Plaintiffs must also demonstrate a link between the policy and the constitutional violation, and the policy must be maintained with "objective deliberate indifference" to a constitutionally protected right. *Lawson* v. *Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002). A municipality acts with objective deliberate indifference if it promulgates a policy or custom

4

despite the "known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 567. Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability. *Id.* at 579.

It is thus clear that plaintiffs face an exceedingly difficult legal burden in seeking to establish Eighth Amendment liability against MTC, and this court does not believe that their summary judgment briefing even comes close to meeting that burden. Indeed, in contending that an MTC policy or custom resulted in the death of Green, plaintiffs' entire argument is as follows:

> Robyn Williams was deposed as the representative of MTC under Rule 30(b)(6). She was asked to respond to the following question:
> "What—what can you say about our paragraph 6, here, 'Describe backup measures, if any, which MTC employs routinely or otherwise to compensate for no-show correctional officers' since that seems to be a problem?
> She answered:
> A. So it's a matter of trying to get people to stay over from the previous shift and or have other people come in if it's—if it's their day off and you can get ahold of them and have them—have them come in.
> Plaintiffs' Exh. "7", Williams depo. Excerpts p.55, line 18-p,56, line 2.
> That reply led to the following Q and A exchange:
> Q. Okay. So that would be the shift supervisors trying to arrange all of that?
> A. Yes.
> Q. Okay. What—what is your perception of the extent to which the staff was effective or—or—what's the word I'm looking for—whether the—the dorm was properly staffed during these two shifts?
> A. Well, staffing, like we talked about earlier, is an ongoing issue trying to—just trying to hire and keep enough people.
> Q. And that—that was true of that dorm that night?
> A. Yes.
> Q. Okay. And early morning?
> A. Yes.
> Plaintiffs' Exh. "7", Williams depo. Excerpts. p,56, lines 7-22.
>
> Ms. Williams completely corroborates the deposition testimony of CO Phillips about understaffing, shown above. Each prison shift begins a new frantic search for personnel. Employees cannot get to their second shift on time because they have to wait for shift supervisors to find someone to relieve them from the first shift. Apparently MTC does not pay enough to keep employees, so they leave and those who are left are burdened with double shifts, including back to back 16-hour shifts, according to CO

> Phillips, or being called in on their day off. MCCF is in constant turmoil. No wonder CO Gray fell asleep. No wonder CO Gray ignored her subpoena. No wonder Mr. Green was ignored for hours.
>
> MTC's first priority and first obligation as a private corporation is to satisfy its investors, which is in conflict with and in this case takes precedence over the welfare of the prisoners. MTC routinely understaffs its operations in order to keep payroll costs at a minimum and put more money in its investors' pockets. There is an inherent conflict between the corporation's first priority, investor profits, and the corporation's constitutional duty to tend to the serious medical needs of the prisoners. It is a for profit business enterprise. Attention to those medical needs by the medical staff is wholly dependent upon the correctional staff identifying the problem and alerting the medical staff. Green, sadly, was a victim of that inherent conflict. He sat on the floor for hours, gasping and holding his chest. Any alert corrections officer would see a need to alert medical staff immediately.
>
> MTC's highest prison administrators are the decision-makers and policy-makers who subordinate the welfare of the prisoners to investor profit. The Plaintiffs have identified the policy or custom responsible for delay in assistance to Green. By routinely understaffing the prison, the company is deliberately indifferent every day and every hour of every day to its constitutional obligation to put the serious health and welfare needs of its prisoners above profits. The profit motive results in understaffing which in turn puts the inmates at risk in emergencies. It is the "moving force" which results in subpar attention to the prisoners' needs, including Green's needs. The Plaintiffs submit that they have established an unwritten custom or practice that was not formally written or adopted, but that is a pervasive, long-standing practice that essentially has the force of law. *Sharp v. City of Houston*, 164 F.3d 923, 936 (5th Cir. 1999).

[Plaintiff's brief at 13-14].

Plaintiffs thus rely upon allegations of understaffing in asserting liability against MTC, but they offer no authority suggesting that a prison's generalized decisions about staffing levels may establish subjective deliberate indifference under the Eighth Amendment, as to the claims of a specific prisoner who asserts that his medical needs were not met. As quoted above, the only decision cited by plaintiffs at all in this context is the Fifth Circuit's decision in *Sharp*, which is a sexual harassment case bearing no factual resemblance to this case whatsoever.

Once again, plaintiffs must establish that MTC knew that "the inmate" faced a substantial risk of serious harm, which, in the court's view, implies knowledge of a *specific prisoner*'s medical needs and deliberate indifference to them. Moreover, in order to hold MTC liable for

Green's death, plaintiffs must establish that the conduct in question was the result of an official policy or custom by the prison, and not simply that of one of its employees. If accepted by this court, plaintiffs' arguments in this case would seemingly lead to a finding of Eighth Amendment violations for the claims of a broad range of prisoners who allege that they suffered harm based on the staffing levels at a particular prison. This is an exceptionally broad assertion of constitutional liability, and it strikes this court that exceptional assertions require exceptional, or at the very least some, supporting authority. Plaintiffs offer no such authority, and it seems clear that the reason for this failure is that the U.S. Supreme Court's Eighth Amendment jurisprudence requires a much closer causation nexus between the alleged policies or customs of a defendant and the harm suffered by a particular prisoner than plaintiffs suggest in their brief. Plaintiffs' Eighth Amendment claims against MTC will therefore be dismissed.

This court now turns to plaintiffs' state law claims of negligence, as to which they enjoy a considerably more favorable legal playing field than in the Eighth Amendment context. It should be noted at the outset that, as a private entity which does not enjoy the protections of the Mississippi Tort Claims Act (MTCA), MTC is subject to liability for simple negligence under Mississippi law. MTC gamely attempts to persuade this court otherwise, based upon a 1975 district court decision which is not binding authority and which was, as discussed below, recently found inapplicable by another district court in this state. The 1975 decision in question is *Bogard* v. *Cook*, 405 F. Supp. 1202, 1215 (N.D. Miss. 1975), which defendant describes in its brief as follows:

> While Mississippi law has imposed "a duty upon a sheriff in this capacity as jailer to exercise ordinary and reasonable care for the preservation of the life and health of his prisoners," this duty has not been extended to supervisors at large prisons, such as MCCF. *Bogard* v. *Cook*, 405 F. Supp. 1202, 1215 (N.D. Miss. 1975) aff'd, 586 F.2d 399 (5th Cir. 1978). *Id.* at 1216. The reason for not extending this duty is because of the much larger number of inmates housed at MCCF as compared to a jail operated by a sheriff. *Id.*

7

The *Bogard* Court noted that "it would be rare for a sheriff to have custody of more than two dozen prisoners at any time, at least half of whom would probably be pre-trial detainees rather than persons serving time pursuant to a conviction and sentence of a state court." *Id.*

[Defendant's brief at 12].

MTC thus argues, based upon *Bogard*, that it is not subject to liability for negligence under Mississippi law, but this court does not agree. Indeed, MTC recently made virtually identical arguments to U.S. District Judge Daniel Jordan, who rejected them with the following analysis:

> MTC reads too much into this dicta [in *Bogard*]. Significantly, *Bogard* addressed "the test for immunity of public officials" facing common-law claims for acts taken within the scope of their authority. *Id.* at 1215. Indeed the Fifth Circuit affirmed on that same basis. *See Bogard*, 586 F.2d at 401 ("[T]he qualified immunity enjoyed by all the employee-defendants could not be overcome on the basis of simple negligence."). Unfortunately for MTC, it is not an individual state official as in *Bogard*, and it is not otherwise entitled to immunity. Miss. Code Ann. § 47-5-1219(b) (establishing that sovereign immunity does not extend to private-prison contractors); *Richardson v. McKnight*, 521 U.S. 399, 405–06, 412 (1997) (finding "no evidence" that pre-section 1983 common law "gave purely private companies or their employees any special immunity from suits"); *see also Leavitt v. Carter*, 178 So. 3d 334, 339 (Miss. Ct. App. 2012) (holding that "the immunity conferred under the MTCA does not apply to private prisons operated under a contract with the State"). Absent an argument that MTC enjoys immunity from suit, *Bogard* is inapplicable. Aside from *Bogard*, MTC offers no legal authority suggesting that the size of an entity shields it from the duty of reasonable care. To the contrary, other courts have applied that standard to private-prison entities—including MTC.

*Gipson v. Mgmt. & Training Corp.,* No. 3:16-CV-624-DPJ-FKB, 2018 WL 736265, at *2 (S.D. Miss. Feb. 6, 2018). This court agrees with Judge Jordan that *Bogard* was concerned with public official qualified immunity standards under state law, and it further believes that there would be serious practical difficulties in applying a scheme of tort immunity for "large prisons."[1]

---

[1] For example, if courts were to recognize immunity in this context, then they would be confronted with the basic question of exactly how large a prison had to be in order to grant it immunity for its own acts of negligence. Assuming that coherent standards were established in this regard, then it is difficult to discern any public policy rationale for exposing a prison which

8

This court therefore concludes, as Judge Jordan did, that a simple negligence standard applies to plaintiff's state law claims against MTC in this case, and it will presently address those claims.

To succeed on a negligence claim, plaintiffs must establish a duty and demonstrate that the defendant breached that duty and that the breach actually and proximately caused her injuries. *Elliott v. Mgmt. & Training Corp.*, 2017 U.S. Dist. LEXIS 111975, at *30-31 (N.D. Miss. 2017). In assessing the negligence claims in this case, this court notes that plaintiffs assert a number of different breaches of care against both MTC and its employees, and it seems clear that their proof on some of their claims has been rather heavily impeached. In particular, it appears to this court that the summary judgment evidence is quite damaging to plaintiffs' assertion that the prison employees who were on duty at the time responded negligently to Green's medical emergency, once it was reported to them. There are two primary vehicles by which plaintiffs' allegations in this regard have been impeached, namely: 1) the fact that plaintiffs' two "star witnesses," who are prisoners at the facility, have recanted their prior allegations that prison employees were notified of Green's distress in the early morning hours of January 1, 2017 yet failed to respond to it; and 2) defendant has produced a video which appears to demonstrate that the prison employees who were on duty at the time responded quickly once Green's distress was reported to them.

Plaintiffs argue that there are questions about the reliability of the prisoners' new accounts, considering that they are incarcerated at MTC's facility and might conceivably believe it be to their advantage to provide testimony helpful to defendant. For its part, defendant argues,

---

falls just below the threshold to liability, while granting immunity to a prison which falls just above the threshold.

with some force, that the prisoners changed their stories because they were presented with video evidence which demonstrated that their original stories were inaccurate. This court is aware that, at the summary judgment stage, the facts are to be determined in the light most favorable to the plaintiffs, but the impeachment evidence regarding these two prisoners' accounts seems sufficiently strong to stretch this principle to, or even beyond, the breaking point. Ultimately, this court concludes that it is unnecessary to decide whether the prisoners' original stories should be disregarded, given that plaintiffs have other evidence which is, in its view, sufficient to submit the question of negligence to a jury, even without these prisoners' original accounts. This court will presently discuss this evidence.

While the summary judgment evidence appears to be quite damaging to plaintiffs' claims regarding prison employees' response to the incident, it seems much less damaging to their assertion that MTC should be held liable for understaffing issues at its prison. As to this issue, plaintiffs rely upon deposition testimony from MTC employees, as well as personnel records which, they contend, support a conclusion that the prison was understaffed at the time of Green's death. For example, plaintiffs argue in their brief that:

> During her Deposition CO Phillips was shown the work roster for the night shift extending from 10:00 p.m. on December 31, 2016 to 6:00 a.m. on January 1, 2017. Plaintiffs' Exh. "6", Marshall County Correctional Facility (MCCF) roster sheet for the night shift. That roster shows Jessica Wells assigned to the Bravo 2 Dorm tower during that shift. It also shows that the floor officer, Walter Rhone, was absent, and no one is listed in his place in the staff deployment box. Also Carolyn Campbell and Marissa Isom were absent. (Plaintiffs' Exh. "7", MTC representative Robyn Williams Depo. Excerpts, p.53, lines 3-15) Apparently, there was no officer on the floor in Bravo 2 Dorm during the night shift, which included the early hours of the morning on New Year's Day.
>
> During Williams' deposition, it became clear from clocking records that Wells clocked out from the tower at 10:41 p.m. on December 31, less than an hour into her shift. Williams testified that Wells was replaced by Dorothy Gray, even though that was not disclosed in the roster. Williams explained that the clocking records showed Gray clocked in at 2:00 p.m. on December 31 and clocked out at 5:38 a.m. on New Year's Day. She worked two 8-hour shifts back to back, but clocked out 22 minutes before the

> end of the night shift. Plaintiffs' Exh. "7", Williams Depo. Excerpts, p. 47, line 22—p. 48, line 6. Thus, there was no officer in the tower for nearly an hour before Phillips arrived one-half hour late. Gray must be the officer who was in the Bravo 2 Dorm tower throughout the night on New Year's Eve and early morning hours of New Year's Day. Plaintiffs' Exh. "A", Williams Depo. Excerpts, p. 45, line 19--p.48, line 6. She is the officer who Wilson and Pinkton swore was asleep at her post in the tower and could not be awakened.

[Plaintiff's brief at 5].

In response to these detailed arguments submitted by plaintiffs, defendant's reply brief offers a very limited rebuttal as it relates to the overstaffing issue. Indeed, the tone of defendant's arguments regarding the understaffing issue strikes this court as being quite different from its arguments regarding the timeliness of its employees' response, once they became aware of Green's distress. As to the understaffing issue, defendant's submissions strike this court as defensive and reliant upon legalistic defenses which are inapplicable in the negligence context. For example, defendant argues in its reply brief that:

> Plaintiffs have presented irrelevant evidence regarding supposed understaffing and employment turnovers in an attempt to impute a customary practice at MCCF. Like any other employer, the probability of a high turnover and "no call/no shows" in employment is somewhat inevitable. Plaintiff's cherry-picked deposition testimony shows nothing that would equate to any form of an unwritten policy. MTC has not purposely established a culture of high employment turnovers and "no call/no shows," and plaintiffs have presented no evidence to support any such idea. Further, plaintiffs have presented some mystical allegation that the employment conditions are related to the profitability of the highest prison administrators, but have failed to provide any plausible evidence to justify this allegation. This argument is without merit. In fact, the scheduling or calling in of additional staff lies with the local staff on duty. The shift supervisors are not the *final* policymakers for MTCA, and their acts or omissions cannot suffice to create *Monell* liability against MTC. In sum, plaintiffs wish to end run the requirement of establishing a municipal policy or custom by claiming that MTC is vicariously liable for the shift supervisor's inability to have a complete staff on the morning of the subject incident. Not only was the shift supervisor not a final policymaker for MTC, he was not even a final policymaker at MCCF for staffing.

[Defendant's reply brief at 11-12].

In the court's view, MTC's arguments come close to admitting that the prison was, in fact, suffering from staffing shortages on the morning of the incident in question, and defendant appears to rely instead upon the *Monell* standard to establish that it may not be held liable for any such understaffing. While *Monell* is, in fact, a formidable barrier to recovery in any § 1983 claim, its "official policy or custom" standard is simply irrelevant in a claim for simple negligence asserted under Mississippi law. While plaintiffs' previously-quoted arguments regarding understaffing were set forth in the portion of their brief devoted to their Eighth Amendment claims, this court can discern no reason why they could not raise the same arguments as part of a claim that, in making staffing decisions, defendant failed to act as a reasonably prudent prison operator. As quoted previously, for example, plaintiffs argue that:

> By routinely understaffing the prison, the company is deliberately indifferent every day and every hour of every day to its constitutional obligation to put the serious health and welfare needs of its prisoners above profits. The profit motive results in understaffing which in turn puts the inmates at risk in emergencies. It is the "moving force" which results in subpar attention to the prisoners' needs, including Green's needs.

[Plaintiff's brief at 13].

While these arguments are phrased in terms of deliberate indifference under the Eighth Amendment, it seems clear that plaintiffs are essentially arguing that MTC failed to exercise reasonable care in making staffing decisions, namely by placing its own profit concerns over the needs of its inmates. Indeed, plaintiffs specifically allege in their complaint that:

> 23. On information and belief, due to the holiday, MTC management allowed the prison to be dangerously understaffed, or alternatively because of the holiday the management and staff recklessly disregarded their duties to make adequate provision for the medical needs of prisoners, including Mr. Green.

[Amended Complaint at 3]. While this particular allegation did not specifically use the term "negligence," it alleges "reckless[ness]" which involves a higher degree of fault than negligence and thus subsumes allegations of simple neglect. Moreover, the complaint implicitly

12

incorporated these prior factual allegations and alleges that "[i]n addition, or alternatively, the defendants are liable under Mississippi common law and the Mississippi Wrongful Death Statute to the plaintiffs for negligence and gross negligence proximately causing the death of their husband and father." [Amended complaint at 4].

If there were any doubt in this regard, it is removed by the fact that plaintiffs specifically assert, in the first paragraph of their brief, that:

> [Plaintiffs] have filed this lawsuit pursuant to 42 U.S.C. §1983 for violation of Green's right under the Eighth and Fourteenth Amendments to timely care of his serious medical needs and state negligence law, asserting a long delay in assisting Green, due primarily to understaffing by Defendant, amounting to deliberate indifference and gross negligence, thereby causing his death.

[Brief at 1]. Plaintiffs thus made clear in their brief that their "primary" complaint in this case relates to understaffing issues and that they assert both § 1983 and negligence claims in this context. As such, plaintiffs plainly allege that MTC negligently failed to provide adequate staffing for its prison on the morning of Green's death, and defendant cannot reasonably assert that they waived this argument in their briefing. Moreover, the fact that MTC saw fit to argue, based upon a very selective reading of *Bogard*, that large private prisons are somehow immune to allegations of negligence under Mississippi law likewise does not lend itself to confidence in its position on this issue. In this court's experience, parties are generally reluctant to rely upon suspect arguments of law on summary judgment if they feel that the facts are strongly in their favor on a particular issue.

In this vein, this court notes that defendant's own corporate representative Robyn Williams did not appear to dispute plaintiffs' allegations of understaffing in her deposition, testifying that:

> Q: Okay. What is your perception of the extent to which … the dorm was properly staffed during these two shifts?

13

> A: Well, staffing, like we talked about earlier, is an ongoing issue trying to – just trying to hire and keep enough people.
> Q: And that – that was true of that dorm that night?
> A: Yes.
> Q: Okay. And early morning?
> A: Yes.

[Williams depo. at 56]. Defendant's own representative thus declined to testify that the prison was "properly staffed" at the time of Green's death, and, in light of this fact, this court is quite reluctant to conclude that there is no evidence in this case which would warrant this issue even being considered by a jury.

This court notes that, in its briefing, MTC argues that the issue of staffing is one which lies solely in the hands of low-level prison supervisors and which may not be imputed to itself. Specifically, defendant argues that:

> In fact, the scheduling or calling in of additional staff lies with the local staff on duty. The shift supervisors are not the final policymakers for MTCA, and their acts or omissions cannot suffice to create *Monell* liability against MTC.

[Reply brief at 10]. Once again, *Monell* is irrelevant in the negligence context, and MTC merely cites Williams' deposition testimony for the proposition that "the scheduling or calling in of additional staff lies with the local staff on duty." [Id.] The fact remains, however, that it is Mississippi law, and the findings of a jury, which will determine the crucial issues of duty and breach of duty in this case. As such, a jury will not be forced to defer to the procedures which MTC put in place regarding staffing issues, since it might conclude that the procedures themselves are inadequate and constitute evidence of negligence. In the court's view, it is well within the province of a jury to conclude, if the facts so demonstrate at trial, that MTC should have realized that its prison was suffering from staffing shortages which required prompt action, such as by engaging in recruiting efforts and/or by offering higher salaries. This court is

therefore not particularly receptive to defendant's efforts to pre-empt the jury and circumscribe the extent of its own potential liability in this case.

Having said that, this court does agree with defendant that plaintiffs' original case has been heavily impeached by the aforementioned video evidence and recantations, at least as it relates to the response time issue. Plaintiffs do appear to have reasonably strong evidence that the prison was understaffed at the time of Green's death, but it is unclear to this court whether they will be able to demonstrate that MTC's negligence caused that understaffing and was a proximate cause of his death. Regardless, a simple negligence cause of action does not present a particularly heavy burden of proof on plaintiffs, and, once again, the summary judgment standard requires this court to view the facts in the light most favorable to them. This court thus concludes that a jury should be allowed to decide the question of negligence in this case, particularly since MTC itself seems hesitant to argue that its prison was adequately staffed at the time of Green's death. Defendant's motion for summary judgment will therefore be denied as to plaintiffs' negligence claims.[2] This court notes that both parties have filed competing motions to strike certain exhibits submitted by the other side in its briefing, but this court does not regard those exhibits as material to its summary judgment analysis and has not relied upon them in this order. The motions to strike will therefore be dismissed as moot.

It is therefore ordered that defendant's motion for summary judgment [78-1] is granted in part and denied in part, and the parties' competing motions to strike [84-1, 87-1] are dismissed as

---

[2] This court notes that defendant seeks for it to dismiss plaintiffs' claims for punitive damages. As the facts appear to stand now, it seems quite unlikely that this court would permit the issue of punitive damages to be submitted to a jury. Nevertheless, there is Mississippi Supreme Court precedent which suggests that trial courts should wait until after the jury resolves the issue of compensatory damages before deciding whether the issue of punitive damages should be submitted to it. *Bradfield v. Schwartz,* 936 So. 2d 931, 938 (Miss. 2006). This court will, out of an abundance of caution, follow this practice in this case.

moot. Plaintiffs' motion for an extension of time to respond to the summary judgment motion [81-1] is granted.

This, the 5th day of August, 2019.

/s/ Michael P. Mills
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI